UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>   vs.<br><br>SHOALS TECHNOLOGIES GROUP, INC., JASON WHITAKER, DOMINIC BARDOS, BRAD FORTH, PETER WILVER, TY DAUL, TONI VOLPE, LORI SUNDBERG, JEANNETTE MILLS, ROBERT JULIAN, JEFFREY TOLNAR, BRANDON MOSS, KEVIN HUBBARD, J.P. MORGAN SECURITIES LLC, GUGGENHEIM SECURITIES, LLC, MORGAN STANLEY & CO. LLC, UBS SECURITIES LLC, GOLDMAN SACHS & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, COWEN AND COMPANY, LLC, OPPENHEIMER & CO. INC., PIPER SANDLER & CO., ROTH CAPITAL PARTNERS, LLC, JOHNSON RICE & COMPANY L.L.C., NORTHLAND SECURITIES, INC., DEAN SOLON, SOLON HOLDCO I, LLC, and SOLON HOLDCO II, LLC,<br><br>                 Defendants. | CASE NO:<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR A JURY TRIAL |

## I. INTRODUCTION

Plaintiff Oklahoma Police Pension and Retirement System ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Shoals Technologies Group, Inc. ("Shoals" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on the Shoals website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed after a reasonable opportunity for discovery.

## II. SUMMARY OF THE ACTION

1. This federal securities class action asserts both strict liability claims under the Securities Act of 1933 (the "Securities Act") and fraud-based claims under the Securities Exchange Act of 1934 (the "Exchange Act"). These claims arise from Defendants' (as defined herein) materially false and misleading statements and omissions concerning Shoals' electrical balance of system ("EBOS") products, related "shrinkback" issues, and cost of revenue.

2. This federal securities class action is brought on behalf of a "Class" of:

(a) All persons and entities that purchased Shoals common stock pursuant, or traceable, or both, to the SPO Materials (as defined herein) issued in connection with Shoals' December 2022 secondary public offering (the "SPO") against Shoals and the Securities Act

1

Defendants (as defined herein) for violations of Sections 11, 12(a)(2), and 15 of the Securities Act; and

(b)     All persons and entities that purchased Shoals common stock between May 17, 2022 and November 7, 2023, inclusive (the "Class Period"), against Shoals and the Exchange Act Individual Defendants (as defined herein) for violations of Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

3.      Under Sections 11, 12(a)(2), and 15 of the Securities Act, the Securities Act Defendants are liable for materially false and misleading statements contained in the SPO Materials.  Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct as to the Securities Act claims.

4.      Shoals purports to be a leading provider of electrical balance of system or EBOS products for solar power generation, battery storage, and electric vehicle charging infrastructure. In the context of solar power generation, Shoals EBOS products encompass all of the components necessary to transport electric currents produced by solar panels to an inverter, allowing the current to be delivered to a power grid or an energy storage product.

5.      Prior to, and during the Class Period, Shoals used polymer-insulated copper wires, which it purchased from a number of different suppliers, in its EBOS products.  The wires served a critical role in Shoals EBOS products as part of custom wire harnesses that are used to aggregate electricity from multiple solar panels and deliver that electricity to inverters.

6.      Throughout the Class Period and in the SPO Materials, Defendants misled investors about Shoals' electrical balance of system ("EBOS") products, related "shrinkback" issues, and cost of revenue by failing to disclose that: (1) Shoals did not deliver EBOS products that met the

2

highest levels of quality and reliability; (2) Shoals had received reports of exposed copper conduit in EBOS wire harnesses in a large number of solar fields and was aware that a significant portion of its wire harnesses had defects; (3) Shoals would have to incur between $60 million to $185 million in costs to remediate the wire shrinkback issue; and (4) Shoals had understated its cost of revenue by millions of dollars.

7.     As a result of Defendants' materially false and misleading statements and omissions, Shoals stock traded at artificially inflated prices during the Class Period because in reality, and as remained undisclosed to investors, Shoals learned of customers experiencing wire insulation shrinkback by no later than March 2022. For example, in March 2022, Shoals learned of exposed copper conduit resulting from shrinkback in EBOS wire harnesses at a customer's solar field in Arizona. Indeed, throughout 2022, Shoals learned of numerous customers experiencing similar copper conduit exposure, or shrinkback. As investors belatedly found out, Shoals had installed defective wire harnesses in at least 300 solar fields. These harnesses represented approximately 30% of the total amount of Shoals harnesses manufactured between 2020 and 2022. As a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects during the Class Period were materially false and/or misleading.

8.     On November 7, 2023, Shoals stunned the market by revealing that the Company had been forced to take an additional $50.2 million charge for warranty expense as result of the wire shrinkback issue. Shoals further advised that it expected the wire shrinkback issue to cost between $59.7 million and $184.9 million dollars to remedy.

9.     On this news, Shoals' stock price fell more than 20%, from a closing price of $16.23 per share on November 7, 2023, to a closing price of $12.95 per share on November 9, 2023, wiping out approximately $550 million in market capitalization.

10.     Securities analysts were shocked by the disclosure and linked Shoals' sharp stock price decline to the warranty charge.  For example, in a report dated November 10, 2023, analysts at Barclays declared that "the upper end of the $60-$185mm came as surprise to investors and has contributed to the underperformance of the stock."  Similarly, analysts at Truist noted that the third-quarter results "were heavily impacted by a ~$50mm warranty charge that drove unadjusted 3Q [gross margins] well below our/street estimates."

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## III.     JURISDICTION AND VENUE

12.     The claims asserted herein arise under Sections 11, 12, and 15 of the Securities Act (15 U.S.C. §§ 77k, 77*l*, and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Personal jurisdiction and venue are proper in this Judicial District pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v(c)), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)), and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing

4

public, and the omission of material information, occurred in substantial part in this Judicial District, as Shoals is headquartered in this Judicial District.

15. Because the Underwriter Defendants (as defined herein) were counterparties to the Underwriting Agreement and each of the Securities Act Individual Defendants (as defined herein) authorized the execution of the Underwriting Agreement by Shoals, each of them also submitted to the jurisdiction of this Court by directing acts within this Judicial District out of which this action arises.

16. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## IV. COMPANY BACKGROUND

17. Founded by Dean Solon ("Solon") in 1996, Shoals is based in Portland, Tennessee and provides EBOS products for solar energy projects in the United States. The Company sells solar products principally to engineering, procurement, and construction firms ("EPCs") that build such solar energy projects. The Company designs, manufactures, and sells systems for two types of wiring architectures used by the U.S. solar industry: Homerun EBOS and Combine-as-you-go EBOS. In 2021 and 2022, Shoals derived 73% and 77.8% of its revenues, respectively, from the sales of these systems. By 2023, those products provided 81.5% of Shoals' revenues.

18. A critical part of these EBOS systems is a custom wire harness that is used to aggregate electricity from multiple solar panels and deliver that electricity to inverters. The wires in these harnesses act as conductors, intended to carry high-voltage electricity. Shoals purchases these wires from a number of different suppliers to manufacture its EBOS products.

5

19.     By March 2022, at the latest, Shoals received a report from a customer of exposed copper conductors on wire harnesses installed at the customer's Arizona solar field.  Shoals, at its own expense, replaced the affected harnesses on the end-user's site.  Numerous other Shoals customers reported similar instances of exposed cooper conductors in solar fields throughout 2022.

20.     Shoals installed EBOS systems with defective wire harnesses at approximately 300 solar fields, representing approximately 30% of all wire harnesses installed by Shoals between 2020 and 2022.

## V.     SUBSTANTIVE ALLEGATIONS – SECURITIES ACT CLAIMS

21.     The claims set forth herein pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act are brought on behalf of persons or entities who purchased Shoals common stock in the SPO.  The Securities Act claims are based solely on strict liability and negligence, and are not based on any knowing or reckless conduct by or on behalf of any Defendant—*i.e.*, they do not allege, and do not sound in, fraud—and Plaintiff specifically disclaims any allegations of fraud, scienter, or recklessness in these non-fraud claims.

### A.     Securities Act Parties

#### 1.     Plaintiff

22.     Based in Oklahoma City, Oklahoma, Plaintiff Oklahoma Police Pension and Retirement System provides retirement and related benefits for qualified police officers and their beneficiaries in the State of Oklahoma.  Plaintiff manages over $3 billion in assets for the benefit of more than 10,500 participants.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Shoals common stock in the SPO from J.P. Morgan Securities LLC and suffered damages as a result of the violations of the federal securities laws alleged herein.

6

### 2. Defendants

#### a. Corporate Defendant

23.     Defendant Shoals is incorporated under the laws of Delaware, with its principal executive offices located in Portland, Tennessee.  The Company's common stock trades on the Nasdaq Global Market (the "Nasdaq") under the ticker symbol "SHLS."  Shoals offered and sold 2,000,000 shares of Shoals common stock in the SPO.

#### b. The Securities Act Individual Defendants

24.     Defendant Jason Whitaker ("Whitaker") served as the Company's Chief Executive Officer ("CEO") from January 2020 to March 15, 2023, and served as a member of Shoals' board of directors (the "Board") from January 2021 to March 15, 2023.  Defendant Whitaker signed the Registration Statement (as defined herein) in connection with the SPO, which was filed with the SEC.

25.     Defendant Dominic Bardos ("Bardos") has served as the Company's CFO since October 3, 2022.  Defendant Bardos signed the Registration Statement in connection with the SPO, which was filed with the SEC.

26.     Defendant Brad Forth ("Forth") has served as a member of Shoals' Board since June 2017.  Defendant Forth signed the Registration Statement in connection with the SPO, which was filed with the SEC.

27.     Defendant Peter Wilver ("Wilver") has served as a member of Shoals' Board since January 2021.  Defendant Wilver signed the Registration Statement in connection with the SPO, which was filed with the SEC.

28.     Defendant Ty Daul ("Daul") has served as a member of Shoals' Board since March 2021.  Defendant Daul signed the Registration Statement in connection with the SPO, which was filed with the SEC.

29.     Defendant Toni Volpe ("Volpe") has served as a member of Shoals' Board since March 2021.  Defendant Volpe signed the Registration Statement in connection with the SPO, which was filed with the SEC.

30.     Defendant Lori Sundberg ("Sundberg") has served as a member of Shoals' Board since March 2021.  Defendant Sundberg signed the Registration Statement in connection with the SPO, which was filed with the SEC.

31.     Defendant Jeannette Mills ("Mills") has served as a member of Shoals' Board since August 2022.  Defendant Mills signed the Registration Statement in connection with the SPO, which was filed with the SEC.

32.     Defendant Robert Julian ("Julian") has served as a member of Shoals' Board since August 2022.  Defendant Julian signed the Registration Statement in connection with the SPO, which was filed with the SEC.

33.     Defendants Whitaker, Bardos, Forth, Wilver, Daul, Volpe, Sundberg, Mills, and Julian are collectively referred to herein as the "Securities Act Individual Defendants."

34.     Each of the Securities Act Individual Defendants participated in the preparation of the SPO Materials and in the making of the materially inaccurate, misleading, and incomplete statements alleged herein.  In particular, the Securities Act Individual Defendants reviewed, edited, and approved the SPO Materials, participated in the SPO, and solicited the purchase of Shoals common stock in the SPO to serve their financial interests and those of Shoals.

8

### c.  The Underwriter Defendants

35.  Defendant J.P. Morgan Securities LLC ("JPMorgan") served as an underwriter for the SPO.  JPMorgan maintains an office and conducts business operations in this District.

36.  Defendant Guggenheim Securities, LLC ("Guggenheim") served as an underwriter for the SPO.  Guggenheim maintains an office and conducts business operations in this District.

37.  Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the SPO.  Morgan Stanley maintains an office and conducts business operations in this District.

38.  Defendant UBS Securities LLC ("UBS") served as an underwriter for the SPO.  UBS maintains an office and conducts business operations in this District.

39.  Defendant Goldman Sachs & Co. LLC ("GS&Co.") served as an underwriter for the SPO.  GS&Co. maintains an office and conducts business operations in this District.

40.  Defendant Barclays Capital Inc. ("Barclays") served as an underwriter for the SPO.  Barclays maintains an office and conducts business operations in this District.

41.  Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the SPO.  Credit Suisse conducts business operations in this District.

42.  Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for the SPO.  Cowen maintains an office and conducts business operations in this District.

43.  Defendant Oppenheimer & Co. Inc. ("Oppenheimer") served as an underwriter for the SPO.  Oppenheimer maintains an office and conducts business operations in this District.

44.  Defendant Piper Sandler & Co. ("Piper Sandler") served as an underwriter for the SPO.  Piper Sandler maintains an office and conducts business operations in this District.

45.     Defendant Roth Capital Partners, LLC ("Roth") served as an underwriter for the SPO.  Roth conducts business operations in this District.

46.     Defendant Johnson Rice & Company L.L.C. ("Johnson Rice") served as an underwriter for the SPO.  Johnson Rice conducts business operations in this District.

47.     Defendant Northland Securities, Inc. ("Northland") served as an underwriter for the SPO.  Northland conducts business operations in this District.

48.     The Defendants listed in ¶¶ 35-47 are referred to herein as the "Underwriter Defendants."  The Underwriter Defendants sold 29,900,000 shares of Shoals common stock in the SPO—including the Underwriter Defendants' firm commitment to purchase and offer 26,000,000 shares of Shoals common stock and the full exercise of the Underwriter Defendants' option to purchase and offer up to 3,900,000 additional shares of Shoals common stock (15% of the firm shares offered)—at $22.25 per share and shared $23,284,625 in underwriting discounts and commissions.  The Underwriter Defendants' failure to conduct adequate due diligence in connection with the SPO and the preparation of the SPO Materials was a substantial factor leading to the harm complained of herein.

### d.     The Selling Stockholder Defendants

49.     Defendant Dean Solon founded Shoals in 1996, was Shoals' CEO between November 1996 and December 2019, and served as a member of Shoals' Board until his resignation on February 21, 2022.  Solon owned Shoals stock during the relevant period and offered and sold 564,668 shares of Shoals stock in the SPO.  Specifically, Solon owned 627,168 shares of Shoals Class A common stock prior to the SPO and owned 62,500 shares of Shoals Class A common stock after the SPO.

50.     Defendant Solon Holdco I, LLC ("Solon Holdco I") is controlled by its managing member, Dean Solon, who had beneficial ownership of the shares of Shoals common stock held directly by Solon Holdco I.  Solon Holdco I owned Shoals stock during the relevant period and offered and sold 9,111,777 shares of Shoals stock in the SPO.  Specifically, Solon Holdco I owned 9,111,777 shares of Shoals Class A common stock prior to the SPO and—following the full exercise of the underwriters' option to purchase up to an additional 1,300,000 shares of Shoals common stock from Solon Holdco I—owned zero (0) shares of Shoals Class A common stock after the SPO.

51.     Defendant Solon Holdco II, LLC ("Solon Holdco II") is controlled by its managing member, Dean Solon, who had beneficial ownership of the shares of Shoals common stock held directly by Solon Holdco II.  Solon Holdco II owned Shoals stock during the relevant period and offered and sold 18,223,555 shares of Shoals stock in the SPO.  Specifically, Solon Holdco I owned 18,223,555 shares of Shoals Class A common stock prior to the SPO and—following the full exercise of the underwriters' option to purchase up to an additional 2,600,000 shares of Shoals common stock from Solon Holdco II—owned zero (0) shares of Shoals Class A common stock after the SPO.

52.     The Defendants listed in ¶¶ 49-51 are referred to herein as the "Selling Stockholder Defendants."

53.     For the purposes of the Securities Act claims alleged herein, Defendant Shoals, the Securities Act Individual Defendants, the Underwriter Defendants, and the Selling Stockholder Defendants are collectively referred to herein as the "Securities Act Defendants."

11

**B.      Material Misrepresentations and Omissions in the SPO Materials**

54.      On or about December 6, 2022, Shoals conducted the SPO, in which Shoals and the Selling Stockholder Defendants sold 29,900,000 shares of Shoals common stock to the public at $22.25 per share for gross proceeds of $665,275,000 (including the Underwriter Defendants' option to purchase and offer 3,900,000 additional shares of Shoals common stock).

55.      The SPO was conducted pursuant to, and the sale of common stock was solicited by, several documents that were filed by Shoals and the Underwriter Defendants with the SEC and disseminated to the investing public, including (i) a November 30, 2022 automatic shelf registration statement on Form S-3, which was declared effective by the SEC on November 30, 2022 (the "Registration Statement"), and (ii) a November 30, 2022 preliminary prospectus supplement and a December 5, 2022 final prospectus supplement filed pursuant to Rule 424(b)(5), which forms part of the Registration Statement (the "Prospectus" and, together with the Registration Statement and attendant materials filed or published with these forms, the "SPO Materials").

56.      The SPO Materials explained that "[w]hen we sell a system solution, we enter into a contract with our customers" that included a "warranty for the products being purchased," and falsely assured investors that the Company's reported "Cost of Revenue" included costs related to the "product warranty."  Shoals also provided generic and boilerplate warnings that the Company "**may** experience . . . quality control problems," that any "defects or performance problems in our products **could** result in loss of customers" and that the Company "**may** face warranty, indemnity and product liability claims arising from defective products."[1]

_____

[1] All emphases are added.

57.     The statements referenced above in ¶ 56 were each inaccurate statements of material fact when made because while noting only the potential negative impacts on Shoals' business, financial condition, and results of operations, the SPO Materials failed to disclose the following significant, then-existing material events, trends, and uncertainties that Shoals had already been facing at the time of the SPO: (1) Shoals did not deliver EBOS products that met the highest levels of quality and reliability; (2) Shoals had received reports of exposed copper conduit in EBOS wire harnesses in a large number of solar fields and was aware that a significant portion of its wire harnesses had defects; (3) Shoals would have to incur between $60 million to $185 million in costs to remediate the wire shrinkback issue; and (4) Shoals had understated its cost of revenue by millions of dollars.

### C.     Post-Offering Events

58.     On November 7, 2023, Shoals filed its Quarterly Report on Form 10-Q for the third quarter of 2023 ("2Q23 10-Q") and held an accompanying earnings call in which Defendants revealed that the wire shrinkback issue was far more severe than previously disclosed. Specifically, the Company reported that the shrinkback issue affected 30% of Shoals' wire harnesses installed between 2020 and 2022, booked a $50.2 million warranty expense for the second quarter of 2023 related to the shrinkback issue, and provided a range of potential loss related to the shrinkback issue of $59.7 million and $184.9 million.

59.     Notably, documents from litigation Shoals brought against the supplier of the wire related to the defective wire harnesses show Shoals knew of significant issues with shrinkback by at least March 2022—more than one and a half years before it disclosed the huge liability it would entail to investors.  As Shoals itself alleged in that action, in March 2022, the Company received information about exposed copper conduit on wire installed in Shoals EBOS components at a

customer's solar field in Arizona. On March 24, 2022, Shoals representatives and others visited the solar field and inspected the defective wire harnesses. Thereafter, Shoals replaced those harnesses at its own expense. In addition, as Shoals admits, by "late 2022 . . . numerous other Shoals' customers began reporting similar instances of cooper conductor exposure."

60. Similarly, in the counterclaim filed by the wire supplier, the supplier stated that, in April 2022, Shoals conceded that the wires used in the harnesses were not in any way defective, but instead, that Shoals' installation or cable management issues had caused the shrinkback in the harnesses. Further, the counterclaim alleged that no other customer of the wire supplier had reported any issue with shrinkback.

61. Analysts were stunned by the disclosure and linked Shoals' sharp stock price decline directly to the revised warranty expense range. For example, on November 10, 2023, analysts at Barclays reported that "the upper end of the $60-$185mm *came as a surprise* to investors and has contributed to the underperformance of the stock." Similarly, analysts at Truist noted that third-quarter results "were heavily impacted by a ~$50mm warranty charge that drove unadjusted 3Q GMs well below our/street estimates."

62. Since the SPO, the value of Shoals common stock shares has declined substantially from the SPO price of $22.25 per share to an all-time low of $7.51 per share on May 8, 2024 (a 66% decline from the SPO price), the date this Action was filed.

63. As a result of the Securities Act Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Class members have suffered significant losses and damages.

14

# COUNT I

## For Violation of Section 11 of the Securities Act
### Against Shoals, the Securities Act Individual Defendants, and the Underwriter Defendants

64.     Plaintiff repeats, incorporates, and realleges each and every allegation above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

65.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendant Shoals, each of the Securities Act Individual Defendants, and each of the Underwriter Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 11, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

66.     The SPO Materials issued in connection with the SPO were inaccurate and misleading, contained inaccurate and misleading statements of material facts, omitted to state material facts necessary to render the statements therein not misleading, and omitted to state material facts required to be stated therein.

67.     Shoals is the registrant and issuer of the common stock sold pursuant to the SPO Materials.  The Securities Act Defendants named herein were responsible for the contents and dissemination of the SPO Materials.  Each of the Securities Act Individual Defendants signed or authorized the signing of the SPO Materials on their own behalf.  The Underwriter Defendants marketed and underwrote the SPO and sold the Shoals common stock issued in the SPO to the Class.

68.     As the issuer of the shares of Shoals common stock sold pursuant to the SPO Materials, Shoals is strictly liable to the Class for the SPO Materials' material misstatements and omissions.  Signatories of the SPO Materials, and possibly other Securities Act Defendants, may also be strictly liable to the Class for such material misstatements and omissions.

15

69. None of the Securities Act Defendants named herein made a reasonable investigation or possessed reasonable grounds to believe that the statements in the SPO Materials were true, complete, accurate, without omissions of any materials facts, or not misleading.

70. By reasons of the conduct alleged herein, each of the Securities Act Defendants named herein violated and/or controlled a person who violated Section 11 of the Securities Act.

71. None of the untrue statements or omissions of material fact in the SPO Materials alleged herein was a forward-looking statement. Rather, each such statement concerned existing facts. Moreover, the SPO Materials did not properly identify any of the untrue statements as forward-looking statements and did not disclose information that undermined the putative validity of those statements.

72. Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiff filed this action. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this action.

73. Plaintiff and the Class have sustained damages. The value of Shoals common stock has declined substantially subsequent to and due to violations by the Securities Act Defendants named in this Count.

74. At the time of their purchases of Shoals common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures alleged herein.

16

**COUNT II**

**For Violation of Section 12(a)(2) of the Securities Act**
**Against the Securities Act Defendants**

75.     Plaintiff repeats, incorporates, and realleges each and every allegation above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

76.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), on behalf of the Class, against Defendant Shoals, the Securities Act Individual Defendants, the Underwriter Defendants, and the Selling Stockholder Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 12(a)(2), and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

77.     Each of the Defendants named in this Count were sellers, offerors, or solicitors of purchases of the Company's common stock pursuant to the defective Prospectus that respectively formed in relevant part the SPO Materials.  The actions of solicitation by these Securities Act Defendants include participating in the preparation of the false and misleading Prospectus and marketing the common stock to investors, including members of the Class.

78.     The Prospectus contained untrue statements of material fact, omitted to state other facts necessary to make statements made therein not misleading, and omitted to state material facts required to be stated therein.

79.     Each of the Securities Act Defendants named in this Count owed Plaintiff and other members of the Class that purchased Shoals common stock pursuant to the Prospectus a duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  By virtue

17

of each of the Securities Act Defendants' failure to exercise reasonable care, the Prospectus contained misrepresentations of material fact and omissions of material fact necessary to make the statements therein not misleading.

80.     Plaintiff and the members of the Class did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus issued in connection with the SPO at the time they purchased Shoals common stock.

81.     By reason of the conduct alleged herein, the Securities Act Defendants violated Section 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiff and the other members of the Class that purchased Shoals common stock pursuant to the Prospectus issued in connection with the SPO Materials sustained substantial damages in connection therewith.  Accordingly, Plaintiff and the other members of the Class that hold the common stock issued pursuant to the Prospectus issued in connection with the SPO Materials have the right to rescind and recover the consideration paid for their shares with interest thereon or damages as allowed by law or in equity.  Class members that have sold their Shoals common stock seek damages to the extent permitted by law.

82.     Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiff filed this action.  Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this action.

18

## COUNT III

### For Violation of Section 15 of the Securities Act
### Against the Securities Act Individual Defendants and the Selling Stockholder Defendants

83.     Plaintiff repeats, incorporates, and realleges each and every allegation above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

84.     This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class, against each of the Securities Act Individual Defendants and the Selling Stockholder Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 15, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

85.     As detailed above, the Securities Act Individual Defendants named herein committed primary violations of the Securities Act by engaging in conduct in contravention of Section 11 of the Securities Act.

86.     The Securities Act Individual Defendants and the Selling Stockholder Defendants each were control persons of Shoals by virtue of their positions as directors, senior officers, and/or significant shareholders of Shoals.  The Securities Act Individual Defendants and the Selling Stockholder Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors, officers, and/or significant shareholders of Shoals.  Shoals also controlled the Securities Act Individual Defendants, given the influence and control the Company possessed and exerted over the Securities Act Individual Defendants and all its employees.  The Selling Stockholder Defendants were control persons of Shoals by virtue of their significant influence over the Company's management and Board and their significant ownership of Shoals common stock, including through Dean Solon who as managing member controlled Solon Holdco I and Solon Holdco II.

19

87.     By reason of the conduct alleged herein, the Securities Act Individual Defendants and the Selling Stockholder Defendants violated Section 15 of the Securities Act, and Plaintiff and other members of the Class have suffered harm as a result.

## VI.     SUBSTANTIVE ALLEGATIONS – EXCHANGE ACT CLAIMS

### A.     Exchange Act Parties

88.     Based in Oklahoma City, Oklahoma, Plaintiff Oklahoma Police Pension and Retirement System provides retirement and related benefits for qualified police officers and their beneficiaries in the State of Oklahoma.  Plaintiff manages over $3 billion in assets for the benefit of more than 10,500 participants.  Plaintiff manages over $3 billion in assets for the benefit of more than 10,500 participants.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Shoals common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

89.     Defendant Shoals is incorporated under the laws of Delaware, with its principal executive offices located in Portland, Tennessee.  The Company's common stock trades on the Nasdaq under the ticker symbol "SHLS."

90.     Defendant Jason Whitaker served as the Company's CEO from January 2020 to March 15, 2023.

91.     Defendant Jeffrey Tolnar ("Tolnar") has served as the Company's President since December 19, 2022 and also served as Interim CEO from March 16, 2023 to July 16, 2023.

92.     Defendant Brandon Moss ("Moss") has served as the Company's CEO since July 17, 2023.

20

93. Defendant Dominic Bardos has served as the Company's CFO since October 3, 2022.

94. Defendant Kevin Hubbard ("Hubbard") served as the Company's Interim CFO from May 5, 2022 to October 2, 2022.

95. Defendants Whitaker, Tolnar, Moss, Bardos, and Hubbard are collectively referred to herein as the "Exchange Act Individual Defendants." The Exchange Act Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, shareholder letters, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Exchange Act Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading. The Exchange Act Individual Defendants are liable for the false statements pleaded herein.

96. For the purposes of the Exchange Act claims alleged herein, Defendant Shoals and the Exchange Act Individual Defendants are collectively referred to herein as the "Exchange Act Defendants." The Securities Act Defendants and the Exchange Act Defendants are collectively referred to herein as "Defendants."

**B.** **Materially False and Misleading Statements Issued During the Class Period**

97. The Class Period for Plaintiff's Exchange Act claims begins on May 17, 2022 and runs through November 7, 2023, inclusive.

98. On May 17, 2022, Shoals filed its Quarterly Report on Form 10-Q for the first quarter of 2022 (the "1Q22 10-Q"). The 1Q22 10-Q explained that "[w]hen we sell a system solution, we enter into a contract with our customers" that included a "warranty for the products being purchased," and falsely assured investors that the Company's reported "Cost of Revenue" included costs related to the "product warranty." Shoals also provided generic and boilerplate warnings that any "defects or performance problems in our products *could* result in loss of customers" and that the Company "*may* face warranty, indemnity and product liability claims arising from defective products."

99. Meanwhile, throughout the Class Period, the Company touted on its website that it "focus[ed] on [the] [q]uality and [r]eliability" of its EBOS components and that "Shoals products are built in a factory[-]controlled environment with calibrated machines and rigorous quality standards. Every component is fully tested using our in-house testing chambers to ensure that our EBOS solutions deliver the highest levels of quality and reliability."

100. Likewise, Shoals' Quarterly Reports on Forms 10-Q for the second and third quarters of 2022, respectively filed after the markets closed on August 15, 2022 and November 14, 2022 (the "2Q22 10-Q" and "3Q22 10-Q," respectively), repeated the same statements referenced in ¶ 98 verbatim, including the generic and boilerplate warnings that any "defects or performance problems in our products *could* result in loss of customers" and the Company "*may* face warranty, indemnity and product liability claims arising from defective products."

22

101. On February 28, 2023, after the market closed, Shoals filed its Annual Report on Form 10-K for 2022 ("2022 10-K"). The 2022 10-K reported that "as of December 31, 2022 and 2021 our estimated accrued warranty reserve was $0.6 million and $0.1 million, respectively."

102. With regard to product quality, the 2022 10-K assured investors that Shoals' "products meet our stringent quality requirements" and touted the Company's focus on "making quality foremost in all we do, make, and sell."

103. On May 8, 2023, Shoals filed its Quarterly Report on Form 10-Q for the first quarter of 2023 (the "1Q23 10-Q"). The 1Q23 10-Q publicly disclosed for the first time that the "[C]ompany has been notified by certain customers that a subset of wire harnesses used in its EBOS solutions is presenting excessive pull back of wire insulation at connection points." However, Shoals downplayed the issue, stating that it was only "probable that the Company will incur costs related to the repair or replacement of the impacted wire harnesses," but that "it is not possible to reasonably estimate those costs."

104. On August 1, 2023, Shoals filed its quarterly report for the second quarter of 2023, *i.e.*, the 2Q23 10-Q, and held a call with analysts to discuss the results. The 2Q23 10-Q disclosed that Shoals had recorded a $9.4 million charge for warranty expense due to the previously disclosed wire issue. Despite the charge, the 2Q23 10-Q continued to describe quality control problems as a mere risk that ***could*** potentially materialize in the future, stating that "we ***may*** experience delays, disruptions or quality control problems in our manufacturing operations."

105. The 2Q23 10-Q also repeated the generic and boilerplate warnings that:

Any actual or perceived errors, defects or poor performance in our products ***could*** result in the replacement or recall of our products, shipment delays, rejection of our products, damage to our reputation, lost revenue, diversion of our engineering personnel from our product development efforts and increases in customer service and support costs, all of which ***could*** have a material adverse effect on our business,

23

financial condition and results of operations. . . . defective components **may** give rise to warranty, indemnity or product liability claims against us.

106.     At the same time, the 2Q23 10-Q reassured investors that Shoals "conduct[s] quality assessments on [its] products and these products have stringent quality requirements."

107.     During the accompanying earnings call for the second quarter of 2023 held that same day, Oppenheimer analyst Colin Rusch asked Defendants to "talk a little bit about the wire issues . . . how extensive it was in terms of the number of customers and number of shipments and how much time it was spread over?"   In response, Defendant Bardos stated, "[w]e've communicated pretty much everything we can," and "[t]he charge that we booked in the quarter we believe is adequate to do the remediation required, and that's why we booked it."

108.     The above statements identified in ¶¶ 98-107 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.   Specifically, Defendants failed to disclose to investors that: (1) Shoals did not deliver EBOS products that met the highest levels of quality and reliability; (2) Shoals had received reports of exposed copper conduit in EBOS wire harnesses in a large number of solar fields and was aware that a significant portion of its wire harnesses had defects; (3) Shoals would have to incur between $60 million to $185 million in costs to remediate the wire shrinkback issue; and (4) Shoals had understated its cost of revenue by millions of dollars.   As a result, Defendants' positive statements about the Company's financial guidance, business,

operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### C. The Truth Is Revealed

109. The truth regarding Shoals' fraudulent conduct was revealed after the close of the markets on November 7, 2023. That day, Shoals filed its Quarterly Report on Form 10-Q for the third quarter of 2023 ("2Q23 10-Q") and held an accompanying earnings call in which Defendants revealed that the wire shrinkback issue was far more severe than previously disclosed. Specifically, the Company reported that the shrinkback issue affected 30% of Shoals' wire harnesses installed between 2020 and 2022, booked a $50.2 million warranty expense for the second quarter of 2023 related to the shrinkback issue, and provided a range of potential loss related to the shrinkback issue of $59.7 million and $184.9 million.

110. Notably, documents from litigation Shoals brought against the supplier of the wire related to the defective wire harnesses show Shoals knew of significant issues with shrinkback by at least March 2022—more than one and a half years before it disclosed the huge liability it would entail to investors. As Shoals itself alleged in that action, in March 2022, the Company received information about exposed copper conduit on wire installed in Shoals EBOS components at a customer's solar field in Arizona. On March 24, 2022, Shoals representatives and others visited the solar field and inspected the defective wire harnesses. Thereafter, Shoals replaced those harnesses at its own expense. In addition, as Shoals admits, by "late 2022 . . . numerous other Shoals' customers began reporting similar instances of cooper conductor exposure."

111. Similarly, in the counterclaim filed by the wire supplier, the supplier stated that, in April 2022, Shoals conceded that the wires used in the harnesses were not in any way defective, but instead, that Shoals' installation or cable management issues had caused the shrinkback in the

25

harnesses.  Further, the counterclaim alleged that no other customer of the wire supplier had reported any issue with shrinkback.

112.    Following the November 7, 2023 disclosures, the price of Shoals' stock dropped $3.28 per share, or more than 20%, to close at $12.95 per share on November 9, 2023, wiping out approximately $550 million in market capitalization.

113.    Analysts were stunned by the disclosure and linked Shoals' sharp stock price decline directly to the revised warranty expense range.  For example, on November 10, 2023, analysts at Barclays reported that "the upper end of the $60-$185mm came as a surprise to investors and has contributed to the underperformance of the stock."  Similarly, analysts at Truist noted that third-quarter results "were heavily impacted by a ~$50mm warranty charge that drove unadjusted 3Q GMs well below our/street estimates."

**D.      Undisclosed Adverse Information**

114.    The market for Shoals common stock was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, the Company's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased the Company's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Shoals and have been damaged thereby.

115.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of the Company's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or

26

misrepresented the truth about the Company's business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

### E. Scienter Allegations

116. As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

117. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Shoals, their control over, receipt, and/or modification of the Company's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Shoals, participated in the fraudulent scheme alleged herein.

### F. Inapplicability of Statutory Safe Harbor

118. The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this

Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

119.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Shoals who knew that the statement was false when made.

### G.    Loss Causation

120.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

121.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This artificially inflated the prices of the Company's common stock and operated as a fraud or deceit on the Class. When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of the Company's stock fell precipitously, as the prior artificial inflation came out of the price.

### H.    Applicability of Presumption of Reliance (Fraud-on-the-Market Doctrine)

122.    The market for Shoals common stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to

28

disclose particularized in this Complaint, Shoals common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Shoals common stock and market information relating to Shoals and have been damaged thereby.

123.    At all times relevant, the market for Shoals common stock was an efficient market for the following reasons, among others:

(a)     Shoals was listed and actively traded on Nasdaq, a highly efficient and automated market;

(b)     As a regulated issuer, Shoals filed periodic public reports with the SEC and/or Nasdaq;

(c)     Shoals regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Shoals was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

124.    As a result of the foregoing, the market for Shoals common stock promptly digested current information regarding Shoals from all publicly available sources and reflected such information in the Company's stock price. Under these circumstances, all purchasers of

Shoals common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

125.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNT IV

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against Shoals and the Exchange Act Individual Defendants

126.    Plaintiff repeats, incorporates, and realleges each and every allegation above as if fully set forth herein.

127.    During the Class Period, Defendant Shoals and the Exchange Act Individual Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Shoals common stock; and (iii) cause Plaintiff and other members of the Class to purchase Shoals common stock at

artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Exchange Act Defendants took the actions set forth herein.

128.    Defendant Shoals and the Exchange Act Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Shoals common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  The Exchange Act Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

129.    Defendant Shoals and the Exchange Act Individual Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's business, operations, and prospects, as specified herein. The Exchange Act Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the Company's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Shoals and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein,

31

and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

130.    Each of the Exchange Act Individual Defendants' primary liability and controlling-person liability, arises from the following facts: (i) each of the Exchange Act Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of the Exchange Act Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Exchange Act Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Exchange Act Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

131.    Defendant Shoals and the Exchange Act Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.    The Exchange Act Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock.  As demonstrated by the Exchange Act Defendants' overstatements and misstatements of

the Company's business, operations, and prospects throughout the Class Period, the Exchange Act Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

132. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Shoals common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the shares and stock traded or trades, and/or in the absence of material adverse information that was known or recklessly disregarded by the Exchange Act Defendants, but not disclosed in public statements by the Exchange Act Defendants during the Class Period, Plaintiff and the other members of the Class purchased Shoals common stock during the Class Period at artificially inflated prices and were damaged thereby.

133. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff, the other members of the Class, and the marketplace known of the truth regarding the problems that Shoals was experiencing, which were not disclosed by the Exchange Act Defendants, Plaintiff and other members of the Class would not have purchased Shoals common stock, or, if they had purchased

such shares or stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

134. By virtue of the foregoing, Shoals and the Exchange Act Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

135. As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT V

**For Violations of Section 20(a) of the Exchange Act**
**Against the Exchange Act Individual Defendants**

136. Plaintiff repeats, incorporates, and realleges each and every allegation above as if fully set forth herein.

137. The Exchange Act Individual Defendants acted as controlling persons of Shoals within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Exchange Act Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Each of the Exchange Act Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements

were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

138. In particular, the Exchange Act Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

139. As set forth above, Shoals and the Exchange Act Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Exchange Act Individual Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## VII. CLASS ACTION ALLEGATIONS

140. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of:

(a) All persons and entities that purchased Shoals common stock pursuant, or traceable, or both, to the SPO Materials issued in connection with Shoals' December 2022 SPO, except those who are excluded below, against Shoals and the Securities Act Defendants for violations of Sections 11, 12(a)(2), and 15 of the Securities Act; and

(b) All persons and entities that purchased Shoals common stock during the Class Period between May 17, 2022 and November 7, 2023, inclusive, except those who are excluded below, against Shoals and the Exchange Act Individual Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

35

141.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, common stock of Shoals actively traded on the Nasdaq (an open and efficient market) under the ticker symbol "SHLS."  Millions of Shoals shares were traded publicly during the Class Period on the Nasdaq.  As of February 26, 2024, Shoals had more than 170 million shares of Class A common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Shoals or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

142.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

143.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

144.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendants violated the Securities Act or Exchange Act, or both, by the acts and omissions as alleged herein;

36

(b)     Whether Defendants omitted or misrepresented material facts, including whether the SPO Materials misrepresented and/or omitted material information in violation of the Securities Act;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether, with respect to the Exchange Act claims only, the Exchange Act Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(e)     Whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Shoals;

(f)     Whether the market price of Shoals common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

(g)     The extent to which the members of the Class have sustained damages and the proper measure of damages.

145.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress

37

the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## PRAYER FOR RELIEF

146. WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

(a) Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b) Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

(c) Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(d) Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 8, 2024                Respectfully submitted,

                                  **STRANCH, JENNINGS & GARVEY PLLC**

                                  By: */s/ J. Gerard Stranch, IV*
                                  J. Gerard Stranch, IV (BPR 23045)
                                  The Freedom Center
                                  223 Rosa L. Parks Avenue
                                  Suite 200
                                  Nashville, TN 37203
                                  Tel.: (615) 254-8801
                                  gstranch@stranchlaw.com

                                  *Local Counsel for Plaintiff Oklahoma Police
                                  Pension and Retirement System*

38

**SAXENA WHITE P.A.**

Lester Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

-and-

Rachel Avan (*pro hac vice* forthcoming)
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
ravan@saxenawhite.com
mduenas@saxenawhite.com

*Counsel for Plaintiff Oklahoma Police Pension and
Retirement System*